Eldron McKee, et al., Plaintiffs-Appellees, v. Yellow Cab Company, a Corporation, and Herman Levine, Defendants-Appellants.

Gen. No. 48,612.

First District, Second Division.

June 12, 1962.

Julius Jesmer and Robert D. Jesmer, of Chicago (William C. Wines, of counsel), for appellants.

Unger & Unger, of Chicago (Merwin Auslander, of counsel), for appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Eldron and Geraldine McKee, husband and wife, and their three minor children brought suit for damages growing out of personal injuries sustained by them when the automobile in which they were driving collided with a taxicab of the Yellow Cab Company operated by Herman Levine, its employee. Eldron McKee was driving plaintiffs' car. Plaintiffs' statement of claim alleged, and the answers of defendants denied, that each of the plaintiffs was in the exercise of due care, that defendants were guilty of negligent or wilful misconduct, and that each of the plaintiffs suffered injuries as the result of the alleged acts of the cab company or its employee. The jury returned verdicts, and the court entered judgment, in favor of plaintiffs in the following amounts:

| | |
|---|---|
| Eldron McKee | $1000.00 |
| Geraldine McKee | 2100.00 |
| Larry McKee | 1000.00 |
| Patricia McKee | 750.00 |
| Paul McKee | 200.00 |

Defendants made a post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a

new trial; the court entered an order denying defendants' motion. Defendants appeal from that order.

Defendants contend that the verdicts were against the manifest weight of the evidence. In addition, they say that plaintiffs' evidence was in direct and diametrical conflict, not only with the evidence of defendants, but with plaintiffs' own answers to interrogatories; and defendants assert that, in a case so close on the facts, they are entitled to a new trial because prejudicial errors committed by the trial court may well have turned the scale in favor of the successful parties.

The accident occurred February 9, 1957 at the intersection of Spaulding and Fifth Avenues in Chicago. Mr. Levine was traveling south on Spaulding, which is wide enough for two cars; Fifth Avenue is almost twice that wide. About twelve to twenty feet back of the crosswalk to Fifth Avenue there was a stop sign governing southbound traffic on Spaulding. Mr. Levine stated that he was coming from the north and that in the block before he reached the intersection the highest speed he attained was about eighteen to twenty miles an hour; that he stopped one or two seconds at the stop sign at the intersection; that there were trucks parked in a vacant lot on the right side of Spaulding, blocking off his view of the entire intersection on his way to the corner; that after stopping, he proceeded into Fifth Avenue at a speed under five miles an hour—probably three or four miles an hour; that as he proceeded out, he saw plaintiffs' car coming from the west; that the front of his cab had just passed the crosswalk by about a car length out in the street; that the plaintiff driver was traveling about thirty to thirty-five miles per hour on the left-hand lane of Fifth Avenue going east. When Mr. Levine saw plaintiffs' car proceeding east at the stated rate of speed, he slammed on his brakes and stopped just about on the center line. Plaintiffs' car braked a

couple of times and finally touched the cab driver's right front fender and stopped. After the impact plaintiffs' car came to rest right up against the right front fender of the cab, which was not moved by the impact. Both drivers got out of their cars to look the situation over. Plaintiffs' bumper was lying up against the fender of the cab, the cab's right fender was dented, and plaintiffs' car had a bright hard scratch on the bumper. Mr. Levine stated that he had a conversation with the plaintiff driver and his wife, who had stepped out of the car by that time. The cab driver said: "I'm sorry about it, and if anybody is hurt here, I'd be glad to take anyone to the hospital." The plaintiff driver said that would not be necessary. The parties waited for the police, both drivers talked to the officers, and after this conversation both cars left the scene of the accident. The only witnesses who testified on the trial were the McKees and Levine.

■ Defendants charge that plaintiff counsel's misstatement that Mr. McKee's original answer to interrogatory 40 had been superseded seriously prejudiced the jury against defendants, and constituted reversible error. The interrogatory reads: "Did you see the taxi cab in question at any time before the collision? If so, where was it and where was your motor vehicle at that time (describe the location and state of motion of each)." Mr. McKee made the following unqualified answer to the interrogatory: "No." Mrs. McKee answered as follows: "Saw taxi cab just before he struck our car, when it was in front of our car." On trial Mr. McKee changed his answer by testifying: "I watched the cab all the way up until the time of the collision. . . . I would say he slowed down a little bit just seconds before we collided. The cab was about five or eight feet away when it slowed down." Queried as to his unqualified negative answer to defendants' interrogatory 40, Mr. McKee said: "I

don't remember giving answers to certain questions concerning this accident. I never saw Defendants' Exhibit 1 [the interrogatory and answer] for identification before."

It appears that at this point in the examination of Mr. McKee the following colloquy occurred: "Mr. Gustafson [counsel for plaintiffs]: If your Honor please, I think since the interrogatories have been amended by the Court order, that the original interrogatory and answer is no longer in the Court file." After further examination as to the interrogatory, counsel for defendants advised the court that it was not amended by court order, whereupon Mr. Gustafson asserted that "leave of Court was obtained." This statement was incorrect. What actually happened was that Mr. McKee had subsequently filed with the clerk of the court an amended and a different answer to the interrogatory, but without leave of court. Defendants' counsel argued that Mr. McKee had made a prior contradictory statement. The court overruled his objection. After proceedings outside the presence of the jury it was discovered that no court order had been obtained permitting any amendment to the answer to the interrogatory. Nevertheless the trial court refused to instruct the jury to disregard the self-serving amended answer that had been filed without leave of court. As a result, the misstatement of plaintiffs' counsel that such an order had been obtained led to his being forced to read a self-serving retraction of Mr. McKee's statement in order to avoid the false impression that the court had granted Mr. McKee leave to correct his answer, when such was not the fact, and the implication that defendants' counsel was suppressing an answer filed by leave of court. These proceedings constituted prejudicial error which well may have affected the verdict.

419

■ Further error is charged with respect to the medical testimony. Dr. Henry E. Bielinski diagnosed the injuries of Mr. and Mrs. McKee. The only medical testimony for the defendants was that of Dr. Leonard Richard Smith. He had not examined any of the plaintiffs and testified entirely in response to hypothetical questions; his responses were at variance with those of Dr. Bielinski. It appears that after Dr. Smith had testified and left the courtroom, and after all reasonable opportunity to prevail upon him to return for further testimony had passed, plaintiffs' counsel, as defendants say, "pioneering in a new technique in the defense of personal injury cases," called Mr. Jesmer, sole counsel for the defendants on the trial of the case, to the stand as an adverse witness under section 60. Mr. Jesmer expressed his surprise to the court at being called as a witness, whereupon plaintiffs' counsel advised the court: "I will call him as my own witness." Mr. Jesmer objected and moved that the record show that he made a continuing objection to all questions and asked that all answers thereto be stricken. Thereupon plaintiffs' counsel elicited from Mr. Jesmer the following testimony:

"I called Dr. Leonard Smith as an expert witness in this case. I have known him personally for three years. He knows my father. My father is also an attorney for the Yellow Cab Company. He has known Dr. Smith for more than three years. I know Dr. Smith personally and feel free to use his telephone in his home on occasions. Dr. Smith is also treating me professionally at the present time for an injury to the knee area. He has been treating me for about eight days. He did not hospitalize me, put a cast on my knee, put any traction on my knee, nor did he put any mechanical brace or appliance on my knee other than a Tensor bandage. That knee doesn't cause

420

me pain and it never did, it is stiff as a board. Dr. Smith also gave me a cortisone shot into the knee. Just the elastic bandage and a cortisone shot."

Following this testimony the court ruled that the answers to the questions commencing with the treatment that was given by Dr. Smith to Mr. Jesmer would be stricken; that the point up to where he had testified where he was treated professionally by Dr. Smith would stand. Mr. Jesmer then asked the privilege of making a statement, but the court overruled his request: "No, there will be no statements. I am asking the jury to disregard the last part—it is only limited to the treatment."

As a result of this procedure counsel for plaintiffs made it necessary for Mr. Jesmer, defendants' counsel, to testify that Dr. Smith had treated Mr. Jesmer in a different way from that which he might have recommended for hypothetical patients such as Mr. or Mrs. McKee. Neither Dr. Smith nor any other doctor was called to compare or contrast the injuries to the knee of Mr. or Mrs. McKee with the discomfort from which Mr. Jesmer suffered. Once counsel's purpose became apparent the court did stop this type of proceeding, but because the court stopped it plaintiff's counsel prevailed upon the court not to allow Mr. Jesmer to make a statement explaining the condition of his knee, which was not an injury at all; Mr. Jesmer wanted to make it clear to the jury that his condition did not resemble Mr. or Mrs. McKee's injury. Despite the trial court's ruling, plaintiffs' counsel in his final argument referred to Mr. Jesmer's knee as though that were a proper matter of consideration. In asking for damages in the case and in summing up his argument, he concluded his remarks to the jury by saying: "As you notice, Mr. Jesmer didn't say much about asking for pain and suffering, because

as he himself says, 'an injury is severe or not; you've got it or you haven't,' just as he himself has. Thank you."

It seems obvious that the purpose of plaintiffs' counsel in calling defendants' only counsel to the stand was to insinuate that Dr. Smith, who had not examined the plaintiffs but who had treated defendants' counsel, gave defendants' counsel better or at least different care for an injured knee than he would have prescribed for persons injured by Yellow Cabs—this despite the fact that there was no showing of similarity in the injuries and accordingly no relevance to the case at bar. The effect of this course of procedure on the part of plaintiffs' counsel was to put both Dr. Smith and defendants' lawyer in a bad light in the eyes of the jury.

Because of the errors committed, defendants are entitled to a new trial. ". . . unless the reviewing court can say that on retrial the result could not be otherwise, the cause must be remanded toward the end that the party bringing error may secure substantial justice." Sims v. Chicago Transit Authority, 7 Ill App2d 21, 29, 129 NE2d 23 (1955).

The order of the Municipal Court is reversed and the cause remanded for a new trial.

Order reversed and cause remanded for a new trial.

BRYANT and BURKE, JJ., concur.